C-570-980<br>
Remand<br>
Consol. Ct. No. 21-00538<br>
POR:  01/01/2018 – 12/31/2018<br>
**Business Proprietary Information**<br>
E&C/OVII:  RC

*Wuxi Tianran Photovoltaic Co., Ltd., et al. v. United States*
Consol. Court No. 21-00538 (CIT May 12, 2022)
**Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from People's Republic of China**

FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND

**I.     SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Wuxi Tianran Photovoltaic Co., Ltd., et al. v. United States*, Consol. Court No. 21-00538 (CIT 2022) (*Remand Order*).  These final results of redetermination concern the 2018 administrative review of crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells), from the People's Republic of China (China).[1]  The petitioner in the underlying investigation is SunPower Manufacturing Oregon.  One of the respondents selected for individual examination in the review is Wuxi Tianran Photovoltaic Co., Ltd. (Wuxi Tianran), an exporter of subject merchandise to the United States.

Pursuant to Commerce's request for remand, and the Court's *Remand Order*, we have attempted verification of Wuxi Tianran's use of the Export Buyer's Credit Program (EBCP).  Because one of Wuxi Tianran's customers declined to participate in the virtual verification

---

[1] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018*, 86 FR 48393 (August 30, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

meeting, we were unable to verify non-use of the program by Wuxi Tianran during the period of review (POR).

## II.   BACKGROUND

On August 30, 2021, Commerce published the *Final Results* of the 2018 administrative review of this order.  In the *Final Results*, Commerce relied on adverse facts available (AFA) in finding that Wuxi Tianran benefited from the EBCP as a result of the failure of the Government of China (GOC) to cooperate with respect to this program.  Specifically, Commerce determined, as AFA, that the company used the program based on the GOC's failure to provide both an adequate explanation of the operation of the program and complete documentation of the administrative rules, including the 2013 revisions of the administrative rules regulating the program, as well as a list of all partner/correspondent banks involved in disbursement of funds under the program.[2]  On May 12, 2022, based on our request, the Court remanded the *Final Results* for reconsideration of the EBCP decision.[3]

On August 29, 2022, Commerce issued its Draft Remand Results to interested parties and provided them an opportunity to comment.[4]  In the Draft Remand Results, we continued to find that Wuxi Tianran used the EBCP.[5]

On September 9, 2022, Wuxi Tianran filed comments on the Draft Remand Results.[6] Also on September 9, 2022, Plaintiff-Intervenors Shanghai JA Solar Technology Co., Ltd., JA Solar Technology Yangzhou Co., Ltd., and JingAo Solar Co., Ltd. (collectively, JA Solar) made: (1) a filing in which JA Solar stated that it "concurs with and incorporates by reference the

---

[2] *See Final Results* IDM at Comment 1.
[3] *See Remand Order* at 1.
[4] *See* Draft Results of Redetermination, *Wuxi Tianran Photovoltaic Co., Ltd., et al. v. United States*, Consol. Court No. 21-00538 (CIT May 12, 2022), dated August 29, 2022 (Draft Remand Results).
[5] *Id*.
[6] *See* Wuxi Tianran's Letter, "Comments on Draft Redetermination Pursuant to Court Remand," dated September 9, 2022 (Wuxi Tianran's Comments).

arguments made by the mandatory respondent Wuxi Tianran";[7] and (2) a filing in which JA Solar included new factual information and provided additional comments.[8] On September 15, 2022, we rejected JA Solar's second filing because portions of it contained untimely new factual information; we also provided JA Solar an opportunity to redact all untimely new factual information from the filing and resubmit it.[9] On September 16, 2022, JA Solar resubmitted a redacted version of this filing.[10]

Responses to Wuxi Tianran and JA Solar's comments are provided below. For these final results of redetermination, we are not making any changes to the Draft Remand Results. The Court's specific instructions, and our further analysis pursuant to them, are discussed further below.

### III. ANALYSIS

During the administrative review, Wuxi Tianran provided declarations of non-use of the EBCP from two parties, [                        ], and stated that it provided "a certification issued by all of its customers regarding this program."[11] In the *Final Results*, Commerce concluded as AFA that Wuxi Tianran benefitted from usage of the EBCP because the GOC withheld necessary information.[12] On March 28, 2022, we requested that the Court remand this finding to Commerce "to reconsider the application of facts available with an adverse inference to calculate the benefit to plaintiff."[13] The Court granted the request, stating that "the

---

[7] *See* JA Solar's Letter, "Comments on Draft Remand," dated September 9, 2022 (JA Solar's Comments).
[8] *See* JA Solar's Letter, "New Factual Information and Comments on Draft Remand," dated September 9, 2022.
[9] *See* Commerce's Letter, "Rejection of JA Solar's Comments Containing New Factual Information," dated September 14, 2022.
[10] *See* JA Solar's Letter, "Comments on Draft Remand," dated September 16, 2022 (JA Solar's Additional Comments).
[11] *See* Wuxi Tianran's Letter, "Tianran Section III Response," dated November 18, 2020, at 59 and Exhibit 22.
[12] *See Final Results* IDM at Comment 1.
[13] *See Wuxi Tianran Photovoltaic Co., Ltd., et al. v. United States*, Consol. Court No. 21-538 (CIT 2022) "Defendant's Motion for Voluntary Remand and to Stay Filing of Defendant's Rule 56.2 Brief," at 1.

3

remand is necessary for the reasons stated in *Risen Energy Co. v. United States*, Slip Op. 22-44 (CIT May 12, 2022)." In that decision, the Court also stated that:

> {o}n remand, the Government may attempt to verify the customer certifications of non-use. If the Government decides to remove the EBCP from its subsidy calculation under protest but does not intend to appeal, it must explain on remand why the Court should not provide some form of equitable relief, such as the immediate return of deposits, or an injunction of the continued inclusion of the program with no attempt at verification that results in the temporary collection of funds that ultimately are not owed.[14]

On June 8, 2022, Commerce began its reexamination of Wuxi Tianran's usage of the EBCP by issuing a questionnaire to Wuxi Tianran requesting that it complete a template worksheet to provide "all loans/financing to each of your U.S. importers/customers" during the POR.[15] The questionnaire also requested information regarding the record-keeping procedures of the customers as well as the steps taken to determine whether EBCP assistance was received.

On June 17, 2022, Wuxi Tianran submitted its response to this questionnaire.[16] Wuxi Tianran provided information on behalf of [          ] and stated that [          ] is "the sole importer/customer of merchandise produced and/or exported by Tianran in the United States market during the POR."[17] Wuxi Tianran also provided information on behalf of [          ] and stated that [     ] is the sole importer/customer of merchandise produced and/or exported by Anji DaSol (a producer of subject merchandise and Wuxi Tianran's supplier) in the United States market during the POR.[18] On July 7, 2022, Commerce issued a supplemental

---

[14] *See Risen Energy Co. v. United States*, Slip Op. 22-44 (CIT May 12, 2022) at 6.
[15] *See* Commerce's Letter, "Export Buyer's Credit Supplemental Questionnaire," dated June 8, 2022, at 3.
[16] *See* Wuxi Tianran's Letter, "Export Buyer's Credit Supplemental Questionnaire Response," dated June 17, 2022 (Wuxi Tianran's June 17, 2022, Response).
[17] *Id.* at TIANRAN-RS-1 and TIANRAN-RS-3.
[18] *Id.* at DASOL-RS-1 and DASOL-RS-3.

questionnaire requesting additional loan information regarding [      ],[19] and Wuxi Tianran provided this information on July 13, 2022.[20]

On August 4, 2022, Commerce scheduled a virtual verification of the information provided by Wuxi Tianran in its June 17 and July 13 questionnaire responses; this verification was to take place on August 11, 2022.[21] However, on August 9, 2022, counsel for Wuxi Tianran notified Commerce that Wuxi Tianran did not intend to submit the documents requested in the August 4, 2022, verification agenda pertaining to [      ] and that company officials for [      ] would not participate in the virtual verification meeting.[22]

On August 11, 2022, Commerce met with company officials of [      ] and counsel for Wuxi Tianran for the virtual verification meeting related to that customer. As Commerce stated in its Verification Report, the first topic of discussion was an exhibit compiled by Wuxi Tianran that contained a list of all purchases of subject merchandise by Wuxi Tianran's customers during the POR.[23] This list showed that, in addition to [      ], another U.S. customer purchased subject merchandise from Wuxi Tianran during the POR,[24] contradicting its statement that [      ] was "the sole importer/customer of merchandise produced and/or exported by Tianran in the United States market during the POR" and revealing that complete verification of Wuxi Tianran's customers during the POR would not be possible.[25]

Because Wuxi Tianran had two customers during the POR, [      ], and one of these customers, [      ], declined to participate in the verification, Commerce

---

[19] *See* Commerce's Letter, "Export Buyer's Credit Supplemental Questionnaire," dated July 7, 2022.
[20] *See* Wuxi Tianran's Letter, "Export Buyer's Supplemental Questionnaire Response," dated July 13, 2022.
[21] *See* Commerce's Letter, "Verification Agenda for Remand Redetermination," dated August 4, 2022.
[22] *See* Memoranda, "Conversation with Counsel for Wuxi Tianran Photovoltaic Co. Ltd.," dated August 12, 2022; and "Export Buyers Credit Program Verification Report," dated August 29, 2022 (Verification Report), at 2-3.
[23] *See* Verification Report.
[24] *Id.* at 2.
[25] *See* Wuxi Tianran's June 17, 2022, Response at TIANRAN-RS-1.

ended the virtual verification meeting after reviewing this exhibit because, without participation by [          ], Commerce would be unable fully to verify non-use of the EBCP by all of Wuxi Tianran's importers/customers.  Because the information provided by Wuxi Tianran regarding [          ] could not be verified, the record continues to contain evidentiary gaps concerning whether the U.S. importers/customers of Wuxi Tianran used the EBCP.  Specifically, the company information on the record regarding Wuxi Tianran's use of the EBCP remains incomplete and not fully verified and, thus, insufficient to compensate for the existing record deficiencies stemming from the GOC's withholding of necessary information.

Commerce requires information regarding *all* of a respondent's U.S. importers/customers in order to ensure that none of those importers/customers have received benefits under the EBCP.  Commerce cannot attempt to verify non-usage of the program by reviewing only a portion of Wuxi Tianran's importers/customers because doing so would provide Wuxi Tianran an opportunity to evade Commerce's scrutiny by providing responses only from importers/customers that have not used the EBCP.  Although Wuxi Tianran provided non-use declarations, because not all of its customers participated in verification, Commerce was unable to verify that all of its importers/customers did not receive benefits from the EBCP.

Due to the non-participation in the virtual verification by one of Wuxi Tianran's customers, the information Wuxi Tianran provided regarding this customer cannot be considered reliable to demonstrate non-use of the program.  Therefore, we find Wuxi Tianran has not overcome the GOC's failure to cooperate with respect to the EBCP program, and we continue to determine, as a result of this failure, that AFA is warranted in determining Wuxi Tianran benefitted from the program.

We emphasize that Commerce is not applying AFA based on the failure of either Wuxi Tianran or one of its customers to cooperate. Rather, we find that the partial information provided by Wuxi Tianran was not sufficient to establish that none of its customers used the EBCP during the POR in light of the non-cooperation of the GOC.

## III.   COMMENTS

On August 29, 2022, Commerce released the Draft Remand Results and invited parties to comment.[26] On September 9, 2022, Wuxi Tianran and JA Solar submitted comments on the Draft Remand Results.[27] These comments are addressed below.

**Wuxi Tianran's Comments**

- Wuxi Tianran concedes that Commerce complied with the Court's *Remand Order*, which allowed Commerce to attempt to verify Wuxi Tianran's customer certifications of non-use.[28]

- Wuxi Tianran does not concede that information it provided on behalf of its unaffiliated customers was unreliable or that a complete verification of responses of all of a respondent's unaffiliated importers/customers is necessary to verify a respondent's non-use of the EBCP in all cases.[29]

- The record demonstrates that Wuxi Tianran's U.S. customers substantially complied with Commerce's numerous requests for information. Due to the unique circumstances that arose in this remand proceeding, including but not limited to [          ] non-

---

[26] *See* Draft Remand Results.
[27] *See* Wuxi Tianran's Comments; and JA Solar's Comments; *see also* JA Solar's Additional Comments, submitted in final form on September 16, 2022.
[28] *See* Wuxi Tianran's Comments at 2-3.
[29] *Id.* at 3.

7

participation in virtual verification, Wuxi Tianran does not further challenge Commerce's determination in the Draft Remand Results.[30]

**JA Solar's Comments**

- JA Solar concurs with and incorporates by reference the arguments made Wuxi Tianran.[31]

- Commerce must re-calculate JA Solar's rate based on any changes to Wuxi Tianran's subsidy rate.[32]

**JA Solar's Additional Comments**

- The general rule for calculating the non-selected companies' rate is to use the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding zero and *de minimis* rates and rates determined entirely based on AFA.[33]

- Although a methodology may be permitted by statute, it nonetheless may be "unreasonable as applied."[34] Commerce's laws are intended to be "remedial, not punitive."[35]

- In calculating the rate for JA Solar, which is a non-selected company, Commerce has an underlying obligation to calculate a subsidy rate "as accurately as possible."[36]

---

[30] *Id.* at 11.
[31] *See* JA Solar's Comments at 2.
[32] *Id.*
[33] *See* JA Solar's Additional Comments at 4.
[34] *Id.* (citing *Yangzhou Bestpak Gifts & Crafts Company v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (*Bestpak*); and *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 2022 Ct. Intl. Trade LEXIS 103, *40 (CIT Aug. 11, 2022) ("The court in Qingdao examined the calculation of the rate for non-selected companies in an antidumping case; however, the same principle applies in the countervailing duty context.")).
[35] *Id.* at 4-5 (citing *KYD, Inc. v. United States*, 607 F.3d 760, 767 (Fed. Cir. 2010) (*KYD*) (quoting *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (*NTN Bearing*))).
[36] *Id.* at 5 (citing *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1337 (CIT 2015) (*Borusan*) (quoting *Rhone Poulenc v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (*Rhone*

- Commerce's redetermination is not supported by substantial evidence because Commerce's non-selected companies' subsidy rate is overly punitive. This rate should instead represent an accurate assessment of JA Solar's subsidy rate.[37]

**Commerce's Position:**

We agree with Wuxi Tianran and JA Solar that Commerce has complied with the Court's *Remand Order*.

Regarding JA Solar's additional comments, we agree that the countervailing duty laws are designed to be remedial, not punitive, and that Commerce is to calculate the subsidy rates as accurately as possible.[38] In this case, we have calculated Wuxi Tianran's overall subsidy rate based on the evidence provided on the administrative record. Therefore, we do not agree with JA Solar that the non-selected companies' rate calculated for this period of review is "overly punitive."

As explained in the *Final Results*, the Tariff Act of 1930, as amended (the Act) does not describe how to calculate the subsidy rate for respondents that are not selected for individual examination in an administrative review. Commerce normally determines the total subsidy rates for non-selected companies in reviews in a manner that is consistent with section 705(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation. Section 705(c)(5)(A)(i) of the Act articulates a preference that we are to calculate an all-others rate using rates for "exporters and producers individually investigated, excluding any zero or *de minimi*s

---

*Poulenc*)); *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1356 (Fed. Cir. 2016) ("{T}here is a clear congressional intent' that administrative reviews 'be as accurate and current as possible'") (quoting *Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1373 (Fed. Cir. 2003)); and *Bestpak*, 716 F.3d at 1379 ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible." (citing *Rhone Poulenc*, 899 F.2d at 1191)).
[37] *Id.* at 6.
[38] *See KYD,* 607 F.3d at 767 (quoting *NTN Bearing*, 74 F.3d at 1208)); *see also Borusan,* 61 F. Supp. 3d at 1337 (CIT 2015) (quoting *Rhone Poulenc*, 899 F.2d at 1191).

countervailable subsidy rates, and any rates determined *entirely* under section 776" (*i.e.*, based on AFA).[39] Therefore, Commerce assigned Wuxi Tianran's rate to the 16 non-selected companies because, consistent with section 705(c)(5)A(i) of the Act, Wuxi Tianran's rate was the only rate available that was not zero, *de minimis* or based entirely on AFA.[40] We did not use the AFA rate assigned to Jiawei Solarchina Co. Ltd., the other mandatory respondent,[41] to calculate the rate assigned to non-selected companies because it was based entirely on AFA.

Commerce's methodology ensures that the non-selected companies' rate was remedial, not punitive, and calculated as accurately as possible consistent with the Act. Because we have determined not to change Wuxi Tianran's overall subsidy rate, we are also not changing the rate assigned to the non-selected companies (including JA Solar).

---

[39] *See* section 705(c)(5)(A)(i) of the Act (emphasis added).
[40] *See Final Results* IDM at 5.
[41] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2018*, 86 FR 21691 (April 23, 2021), and accompanying Preliminary Decision Memorandum at 21-22, unchanged in the *Final Results*.

## IV. FINAL RESULTS OF REDETERMINATION

Pursuant to the *Remand Order*, Commerce attempted to verify non-use of the EBCP by Wuxi Tianran's customers. We find that Wuxi Tianran was unable to demonstrate that the EBCP was not used during the POR and, therefore, we have made no changes to Wuxi Tianran's rate for the EBCP. As a result, we have also made no changes to Wuxi Tianran's net subsidy rate for the POR or to the non-selected companies' subsidy rate, which is the same as Wuxi Tianran's rate. Because there is no change to the non-selected companies' rate, we have also not changed the rate assigned to JA Solar, who was a non-selected company in the underlying administrative review.

10/5/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance