UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| WUXI TIANRAN PHTOVOLTAIC CO., LTD., ET AL.,<br><br>    Plaintiff and<br>    Consolidated Plaintiffs,<br><br>  and<br><br>JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., ET AL.,<br><br>    Plaintiff-Intervenors,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant. | **Consol. Court No. 21-00538**<br><br>**Before:** Hon. Jane A Restani,<br>    Senior Judge<br><br>**NON-*CONFIDENTIAL VERSION*:**<br><br>Business Proprietary Information has been redacted from pages 2 and 5 through 7. |

**COMMENTS ON REMAND REDETERMINATION OF PLAINTIFF WUXI TIANRAN PHOTOVOLTAIC CO., LTD**

    Robert G. Gosselink
    Jonathan M. Freed
    Kenneth N. Hammer

    **TRADE PACIFIC PLLC**
    700 Pennsylvania Avenue, SE, Suite 500
    Washington, D.C. 20003
    (202) 223-3760

    Plaintiff Wuxi Tianran Photovoltaic Co., Ltd.

Dated: November 7, 2022

**Consol. Ct. No. 21-00538**

## TABLE OF CONTENTS

<u>Page</u>

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................... 3

    A.    Commerce's *Remand Results* Complies with the *Remand Order*, But All of Tianran's Unaffiliated U.S. Customers Substantially Complied with Commerce's Requests for Information to Verify Tianran's Non-Use of the Export Buyer's Credit Program ......................................................................... 4

III. Conclusion ...................................................................................................... 12

i

**Consol. Ct. No. 21-00538**

# TABLE OF AUTHORITIES

**Judicial Determinations**

*Risen Energy Co., Ltd. v. United States*, 46 CIT __, __, 570 F.Supp.3d 1369, 1373 (2022) ....................................................................................................................................2, 3, 12

**Administrative Determinations**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 86 Fed. Reg. 48,393 (Dep't Commerce Aug 30, 2021) (final results and partial rescission of countervailing duty administrative review; 2018) ................................1, 3

NON-CONFIDENTIAL VERSION – Business Proprietary Information Has Been Redacted

Consol. Ct. No. 21-00538

I.     INTRODUCTION

On behalf of Plaintiff Wuxi Tianran Photovoltaic Co., Ltd. ("Tianran"), we respectfully submit the following comments on the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand in *Wuxi Tianran Photovoltaic Co., Ltd. v. United States, Consol. Court No. 21-00538 (CIT May 12, 2022)* filed on October 6, 2022. *See Final Results of Redetermination Pursuant to Court Remand in Wuxi Tianran Photovoltaic Co., Ltd. v. United States, Court No. 21-00538 (CIT May 12, 2022)*, ECF No. 37, Oct. 6, 2022 ("*Remand Results*"). The *Remand Results* cover an appeal of Commerce's final results in the seventh administrative review of the countervailing duty order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China covering the period from January 1, 2018 through December 31, 2018. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 86 Fed. Reg. 48,393 (Dep't Commerce Aug 30, 2021) (final results and partial rescission of countervailing duty administrative review; 2018), P.D. 278 ("*Final Results*"),[1] and accompanying Issues and Decision Memorandum for the Final Results and Partial Rescission of the Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China; 2018, P.D. 274 (Aug. 23, 2021).

On May 12, 2022, the Court remanded Commerce's decision to apply an adverse inference with regard to facts otherwise available ("AFA") against otherwise cooperating

---

[1] Documents contained in the administrative record are identified by the name and date of the documents, followed by the confidential ("C.D.") and public ("P.D.") index numbers assigned to these documents in the respective administrative record indices that the U.S. Department of Commerce filed with the Court on November 29, 2021. *See* Consol. Admin. Rec. Index, ECF No. 20-4 and 20-5, Nov. 29, 2021.

1

respondent Tianran, which had provided certifications of non-use from all of its U.S. customers that they had not used the China Import-Export Bank ("Ex-Im Bank") Export Buyer's Credit Program ("EBCP"). *Order*, ECF No. 30, May 12, 2022 ("*Remand Order*"). The Court determined that Commerce's continual collection of cash deposits related to the inclusion of the EBCP in the total *ad valorem* subsidy rate calculated by Commerce in the current and past administrative reviews when those cash deposits are not owed is "untenable and inequitable." *See Remand Order* 1 (stating that a remand is necessary for the reasons stated in *Risen Energy Co., Ltd. v. United States*, Slip Op. 22-44 ( CIT May 12, 2022)); *see also Risen Energy Co., Ltd. v. United States*, 46 CIT __, __, 570 F.Supp.3d 1369, 1373 (2022) (stating that the continual collection of deposits that are not owed after the Government has not appealed the court's decision ordering Commerce on remand to conduct verification before rejecting respondent's proof of non-use is "untenable and inequitable").

In the *Remand Results*, while acknowledging that Tianran submitted complete responses to the supplemental questionnaire issued to determine whether EBCP assistance was received by its customers, *Remand Results* 45, and acknowledging that Tianran's importer/customer, [          ] fully participated in virtual verification, Commerce found that the information submitted by Tianran regarding the other of its customers, [     ], could not be verified because that customer declined to participate in virtual verification. *Id.* at 5–6. Further, Commerce found that, due to the non-participation in virtual verification by one of Tianran's customers, the information provided by Tianran regarding this customer cannot be considered reliable to demonstrate non-use of the EBCP. *Id.* at 6. Commerce likewise determined that it "requires information regarding *all* of a respondents U.S. importers/customers in order to ensure that none of those importers/customers have received benefits under the EBCP." *Id.* (emphasis

NON-CONFIDENTIAL VERSION – Business Proprietary Information Has Been Redacted
Case 1:21-cv-00538-JAR    Document 41    Filed 11/07/22    Page 6 of 16

Consol. Ct. No. 21-00538

in original). As a result, Commerce found that Tianran had not provided sufficient information to overcome the Government of China's ("GOC") failure to cooperate with respect to the EBCP program, and found that that failure warranted the application of AFA in determining Tianran benefited from the EBCP. *Id.* Therefore, Commerce continued to apply a final *ad valorem* subsidy rate of 19.28% to Tianran in the *Remand Results*. *Id.* at 11 (making no changes to Wuxi Tianran's net subsidy rate for the period of revew ("POR")); *see also Final Results*, 86 Fed. Reg. at 48,395 (determining a net countervailable subsidy rate of 19.28% for Tianran).

Tianran concedes that Commerce's *Remand Results* generally complies with the Court's *Remand* Order allowing Commerce to attempt to verify Tianran's customer certifications of non-use, including the restrictions imposed upon Commerce's conduct of the remand. *Remand Order* at 1 (ordering that the same parameters on the remand proceeding specified in *Risen Energy Co. v. United States* shall control the remand proceedings here); *see also Risen Energy Co. v. United States*, 46 CIT at __, 570 F.Supp.3d at 1373 (stating that on remand, Commerce may attempt to verify customer certifications of non-use).

## II. ARGUMENT

For the reasons below, based upon the unique circumstances of this case, Tianran does not further challenge Commerce's determination in the *Remand Results*. Tianran does not, however, concede that it is reasonable for Commerce to require complete participation in verification from *all* of a respondent's importers/customers in all circumstances in order to conclude that a respondent has not benefited from the EBCP. Nevertheless, in order to stress its substantial compliance with Commerce's numerous requests for information in the remand segment of this proceeding, Tianran provides an overview of Commerce's requests for

NON-CONFIDENTIAL VERSION – Business Proprietary Information Has Been Redacted
Case 1:21-cv-00538-JAR   Document 41   Filed 11/07/22   Page 7 of 16

Consol. Ct. No. 21-00538

information from its unaffiliated U.S. customers and the significant information provided by those unaffiliated customers in response.

      A.      **Commerce's *Remand Results* Complies with the *Remand Order*, But All of Tianran's Unaffiliated U.S. Customers Substantially Complied with Commerce's Requests for Information to Verify Tianran's Non-Use of the Export Buyer's Credit Program**

Tianran does not concede that the significant information provided on behalf of its unaffiliated U.S. customers was unreliable, as Commerce found. *Remand Results* 56. Nor does Tianran agree with the notion that a complete verification of responses provided regarding all of a respondent's unaffiliated U.S. importers/customers is necessary to verify a respondent's non-use of the EBCP in all cases. *Id.* at 6. However, based upon the unique facts of the remand segment of this proceeding, Tianran does not further challenge Commerce's determination in the *Draft Remand Results*.

Nevertheless, Tianran stresses that all of its U.S. customers during the POR substantially complied with Commerce's requests for information within the remand segment of this proceeding. In order to highlight the significant efforts undertaken by Tianran's unaffiliated U.S. customers and substantial compliance with Commerce' requests for information, Tianran provides the following overview of the information requested by Commerce and the information provided by all of its unaffiliated customers in response to Commerce's wide-ranging requests for information.

On June 8, 2022, Commerce issued a supplemental questionnaire to Tianran relating to the EBCP. Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, Enforcement and Compliance, to Tianran, re: "Remand of the 2018 Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Export Buyer's Credit

4

Supplemental Questionnaire," (June 8, 2022), Rem. P.D. 2 ("1st EBCP Supp. Questionnaire").[2] First, the supplemental questionnaire asked that Tianran report all loans/financing to each of its U.S. importers/customers that were received and/or outstanding during the POR, regardless of whether the customer considered the financing to have been provided under the EBCP program. *Id.* at Attach. at 3, 5. In response, Tianran provided a loan template reporting all forms of loans/financing requested by Commerce of one of its unaffiliated U.S. customers during the POR (i.e., [         ] ("CUSTOMER A")). Letter from Trade Pacific PLLC to Sec'y Commerce, re: "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China Export Buyer's Credit Supplemental Questionnaire Response" (June 17, 2022), Rem. C.D. 2 at Vol. I at TIANRAN-RS-1, Ex. RS-1 ("1st EBCP Supp. Resp."). For its other unaffiliated U.S. customer during the POR, [     ] ("CUSTOMER B"), Tianran reported that CUSTOMER B had no loans/financing received and or outstanding during the POR. *Id.* at Vol. II at DASOL-RS-1.

Second, Commerce's June 8th supplemental questionnaire requested statements from each of the unaffiliated U.S. customers identified in Tianran's Section III response explaining in detail how each confirmed that it [                                   ] and describing the methods used to confirm these facts through their books and records. 1st EBCP Supp. Questionnaire at Attach. at 3, 5. As requested, on June 17, 2022, CUSTOMER A provided a declaration describing the steps taken to confirm through its books and records that the [   ] loan reported during the POR did not cause it to directly or indirectly benefit from

---

[2] Documents contained in the administrative record of the court remand are identified by the name and date of the documents, followed by the confidential ("Rem. C.D.") and public ("Rem. P.D.") index numbers assigned to these documents in the respective administrative record indices that the U.S. Department of Commerce filed with the Court on October 18, 2022. *See* Admin. Rec. Index, ECF Nos. 39-2 and 39-3, Oct. 18, 2022.

5

the EBCP. 1st EBCP Supp. Resp. at Vol. I at Ex. RS-TIANRAN-2. Specifically, CUSTOMER A stated that it took the following steps: (1) consulted the income statement for the fiscal year that coincided with the POR to identify all interest expenses incurred during the same period; (2) reviewed all credit memos for each entry in the relevant account in which interest expenses were recorded; (3) reviewed all documents relating to its outstanding individual revolving line of credit to confirm the terms of the credit line; (4) examined the loan and interest payment statements for the revolving line of credit issued through the end of the POR to confirm that the interest paid, as reflected on statements, reconciles to the interest expense recorded in the relevant account; and (5) consulted its 2018 Form 1120 corporate tax return to ensure that all interest expenses recorded in the relevant subaccount reconciled with the amounts reported in the corporate tax return. *Id.* at ¶¶ 3.a through 3.g. In further support of the declaration, CUSTOMER A provided the following attachments: (a) a copy of the ledger for the relevant interest expense account for the POR; (b) copies of all underlying loan documentation for the revolving credit line; (c) loan statements and records of loan activity during the POR; and (d) copies of the customers' 2018 Form 1120 corporate tax return. *Id.* at Attachs. A through D.

As requested, on June 17, 2022, CUSTOMER B provided a declaration describing the steps taken to confirm through its books and records that it had [   ] loans during the POR, which it stated allowed it to confirm that it could not have directly or indirectly benefited from the EBCP. *Id.* at Vol. II at Exhibit RS-DASOL-1 at ¶ 3. In addition, CUSTOMER B detailed the following additional steps taken to confirm that it could not have directly or indirectly benefited from the EBCP: (1) consulted the income statement for the fiscal year that coincided with the POR to identify all debt and interest expenses incurred during the same period; (2) reviewed the balance sheet and profit and loss income statement for the POR to identify all liabilities; (3)

6

reviewed the balance sheet and profit and loss income statement against the company's 2018 Form 1120 corporate tax return to confirm that the expenses reconciled and that [

] (i.e., except for a loan recorded as received from its shareholders) were recorded. *Id.* at ¶¶ 3.a through 3.d. In further support of the declaration, CUSTOMER B provided the following attachments: (1) a copy of its balance sheet and profit and loss income statement for the POR; (2) copies of the customer's 2018 Form 1120 corporate tax return; and (3) copies of the customer's corrected 2018 Form 1120 corporate tax return. *Id.* at Ex. RS-DASOL-1 at Attachs. A through C.

Third, Commerce's June 8th supplemental questionnaire asked Tianran to answer a series of questions regarding any loans/financing its customers reported receiving under the EBCP. 1st EBCP Supp. Questionnaire at Attach. at 34, 56. Because none of Tianran's customers during the POR reported receiving any loans/financing under the EBCP, Tianran responded that none of the questions was applicable. 1st EBCP Supp. Resp. at Vol. I at TIANRAN-RS-3, Vol. II at DASOL-RS-3.

On July 7, 2022, Commerce issued a second supplemental questionnaire concerning the EBCP. Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, Enforcement and Compliance, to Tianran, re: "Remand of the 2018 Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Export Buyer's Credit Supplemental Questionnaire" (July 7, 2022), Rem. P.D. 6. This supplemental questionnaire contained a single question to Tianran requesting that CUSTOMER B provide the information requested in the Loan template from the initial EBCP supplemental questionnaire for an item

7

identified as a loan from shareholders within CUSTOMER B's corrected 2018 corporate income tax return provided in Tianran's June 17th supplemental response. *Id.* at Attach. at 3.

As requested, on July 13, 2022, CUSTOMER B provided the completed Loan Template for the item identified in Commerce's question. Letter from Trade Pacific PLLC to Sec'y Commerce, re: "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China Export Buyer's Credit Supplemental Questionnaire Response" (July 13, 2022), at DASOL-RS2-1, Ex. DASOL-RS2-1, Rem. C.D. 4–5. However, CUSTOMER B clarified that the item identified in Commerce's question, and in its corrected 2018 corporate income tax return, was not a loan. *Id.* at DASOL-RS2-1–2. Rather, CUSTOMER B stated that the identified item arose from the accounting treatment of business expenses incurred by its only employees/shareholders on behalf of CUSTOMER B that remained unreimbursed as of the end of the tax year. *Id.*

In further support, CUSTOMER B provided a declaration from a shareholder that described in detail the nature of all liabilities recorded in CUSTOMER B's corrected corporate income tax return—all of which reflected business expenses incurred by its employees/shareholders, except for accounts payable. *Id.* at Ex. DASOL-RS2-2. Further, the shareholder provided a sample expense list from the POR to reflect the out-of-pocket business expenses incurred on behalf of CUSTOMER B. *Id.* at Attach. B. The declaration also clarified that there is no loan agreement and that none of the shareholders have any expectation that CUSTOMER B will pay interest on the expense incurred by the shareholders. *Id.* ¶¶ 34.

Next, on August 4, 2022, Commerce issued detailed virtual verification agendas to Tianran concerning both CUSTOMER A's and CUSTOMER B's questionnaire responses. Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, Enforcement and

8

Compliance, to Tianran, re: "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Verification Agenda for Remand Redetermination" (Aug. 4, 2022), Rem. P.D. 10 ("Verif. Agenda"). In advance of virtual verification, Commerce requested that CUSTOMER A provide the following materials: (1) an advance copy of its audited financial statements and tax return covering the POR; (2) a reconciliation of its purchases from Tianran during the POR and the total volume and value of Tianran's U.S. sales during the POR, as reported in Tianran's Section III response; (3) all exclusivity contracts in place between Tianran and CUSTOMER A covering the POR; (4) documentation, including screen shots of accounting records to tie the loan information reported in the loan template provided in response to Commerce's June 7th supplemental questionnaire to its accounting systems, audited financial statements, and its tax return; and (5) documentation, including screen shots of accounting records, to demonstrate the loan information provided in the loan template provided in response to Commerce's June 7th supplemental questionnaire consists of the complete universe of loans held by CUSTOMER A during the POR. *Id.* at 7–8. CUSTOMER A provided all requested materials in response to Commerce's requests.[3]

In advance of virtual verification, the Commerce requested that CUSTOMER B—despite the fact that unaffiliated CUSTOMER B demonstrated it had no loans outstanding during the

---

[3] Commerce's virtual verification procedure provides that pre-verification exhibits are filed via access as "temporary working documents for the verifiers to use during the verification." See Verif. Agenda at 5. However, Commerce states that those pre-verification documents are not available to interested parties. *Id.* As a result, Commerce has not made them part of the administrative record filed in this court remand. *See* Admin. Rec. Index, ECF Nos. 39-2 and 39-3, Oct. 18, 2022. Nonetheless, Commerce does not dispute that Tianran provided all requested information on behalf of CUSTOMER A in response to Commerce's virtual verification agenda. *See* Remand Results 5 (noting CUSTOMER A's participation in virtual verification, acknowledging the submission of a pre-verification exhibit and noting no deficiencies in the requested material provided by CUSTOMER A; noting only CUSTOMER B's intention not to submit documents requested in the pre-verification agenda), 7–10 (acknowledging and not disputing Tianran's characterization of its customers as having substantially complied with Commerce's requests for information).

POR and that it provided detailed clarifying declarations and supporting documentation to further support these facts—provide the following materials: (1) an advance copy of its audited financial statements and tax return covering the POR; (2) a reconciliation of its purchases from Tianran during the POR and the total volume and value of Tianran's U.S. sales during the POR, as reported in Tianran's Section III response; (3) all exclusivity contracts in place between Tianran and CUSTOMER B covering the POR; (4) relevant sales documentation to illustrate the structure of sales and shipments during the POR, including sales and shipments to the first unaffiliated U.S. customer; (5) sales documents for the "two largest *sales* (by value) during the POR and tie them to the relevant *revenue* accounts and then tie the *revenue* account to the audited income statement"; (6) documentation, including screen shots of accounting records to tie the loan information reported in the loan template provided in response to Commerce's July 13th supplemental questionnaire to its accounting systems, audited financial statements, and its tax return; and (7) documentation, including screen shots of accounting records, to demonstrate the loan information provided in the loan template provided in response to Commerce's July 13th supplemental questionnaire consists of the complete universe of loans held by CUSTOMER B. Verif. Agenda at 8–10.

Commerce also requested that CUSTOMER B be prepared to perform the following tasks at verification, some of which appear to be well beyond the scope of the Court's order to attempt to verify unaffiliated CUSTOMER B's non-use of the EBCP program: (1) provide access to its electronic accounting system covering the POR to "demonstrate how the system functions, provide a live, real-time example of a *sale* during the POR being booked into *revenue* and then illustrate how the *revenue* account flows into the income statement"; (2) discuss the structure of *sales and shipments* during the POR, including *sales and shipments* to the first unaffiliated

10

customer and be prepared to discuss how *sales* were invoiced and how the *sale*s were paid for during the POR, how *shipments* were made (including what party acts as the importer of record and which party acts as the consignee), and how delivery is made to CUSTOMER B's unaffiliated U.S. customer.  *Id.* (emphasis added).

On August 9, 2022, Tianran informed Commerce via telephone that Tianran would not be submitting any of the documents requested in the verification agenda pertaining to CUSTOMER B and that company officials for CUSTOMER B would not be participating in the virtual verification meeting scheduled for August 11, 2022.  Memorandum from Robert Copyak, Senior International Trade Compliance Analyst, Office VII, Antidumping and Countervailing Duty Operations, re: "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China:  Conversation with Counsel for Wuxi Tianran Photovoltaic Co., Ltd." (Aug. 12, 2022), Rem. C.D. 9, Memorandum from Robert Copyak, Senior International Trade Compliance Analyst, Office VII, Antidumping and Countervailing Compliance to The File, re: "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China:  Remand Redetermination Verification Report" (Aug. 29, 2022), Rem. P.D. 13, at 2 ("Verification Report").

On August 11, 2022, without having advised Tianran of any changes to verification procedures as a result of the pre-verification exhibits submitted to Commerce by both CUSTOMER A and CUSTOMER B, Commerce performed a substantially truncated virtual verification of the questionnaire responses of Tianran.  *Id.* at 1; *Remand Results* 6.  Commerce abruptly ended verification, asked no further questions, and declined to discuss any of the numerous remaining verification agenda items.  Verification Report at 1.  Commerce also

11

declined to draw any conclusions as to whether the information reported by CUSTOMER A was successfully verified. *Id.*

### III. CONCLUSION

In sum, the record demonstrates that Tianran's U.S. customers substantially complied with Commerce's requests for information in the remand segment to verify the certifications of non-use of the EBCP provided by each of Tianran's U.S. customers in the administrative review. However, because of the unique circumstances that arose in this court remand, including but not limited to CUSTOMER B's non-participation in virtual verification, Tianran does not further challenge Commerce's determination in the *Remand Results*.

Respectfully submitted,

/s/ Jonathan M. Freed
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
(202) 223-3760

Counsel to Plaintiff Wuxi Tianran Photovoltaic Co., Ltd.

Dated: November 7, 2022

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| WUXI TIANRAN PHTOVOLTAIC CO., LTD., ET AL.,<br><br>　　　　　Plaintiff and Consolidated Plaintiffs,<br><br>　　and<br><br>JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., ET AL.<br><br>　　　　　Plaintiff-Intervenors,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant. | Consol. Court No. 21-00538<br><br>**Before:** Hon. Jane A Restani, Senior Judge |

### CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC certifies that the Comments on Remand Redetermination of Plaintiff Wuxi Tianran Photovoltaic Co., Ltd., dated November 7, 2022, complies with the word-count limitation stated in Standard Chambers Procedures ¶ 2(B)(1)(b). These comments contain 3,963 words according to the word-count function of the software used to prepare the memorandum.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　/s/ Jonathan M. Freed
　　　　　　　　　　　　　　　　Jonathan M. Freed
　　　　　　　　　　　　　　　　**TRADE PACIFIC PLLC**
　　　　　　　　　　　　　　　　700 Pennsylvania Avenue, SE, Suite 500
　　　　　　　　　　　　　　　　Washington, D.C. 20003
　　　　　　　　　　　　　　　　(202) 223-3760

Dated: November 7, 2022